## HERITAGE INSURANCE COMPANY OF AMERICA, Appellant,

v.

## James W. McELROY, Jr., Appellee.

### No. 86–1760.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 11, 1986.

Decided Dec. 19, 1986.

James A. Bingley, St. Louis, Mo., for appellant.

Peter P. Fiore, Jr., St. Louis, Mo., for appellee.

Before BOWMAN, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and ARNOLD,* District Judge.

MORRIS SHEPPARD ARNOLD, District Judge.

In May, 1984, appellant Heritage Insurance Company of America obtained a judgment in federal district court against Richard and Marjorie Westerhold of Florissant, Missouri. To collect, it levied against the

---

* Morris S. Arnold, United States District Judge for the Western District of Arkansas, sitting by designation.

Westerholds' house, and an execution sale was held in August, 1984.

The notice of the sale stated that the property would be sold subject to prior liens.** At the sale, plaintiff Heritage bid $500 for the property and defendant James W. McElroy, Jr., bid $20,000. The deputy marshal conducting the sale then announced that the property was sold to defendant McElroy and concluded the bidding, whereupon defendant McElroy accompanied the deputy marshal to his office. When defendant McElroy learned of the liens on the property, he refused to pay and left.

Plaintiff Heritage moved for a second sale of the property, contending moreover that defendant McElroy was liable for any deficiency between his original bid of $20,000 and the price obtained at a second sale. The district court, adopting the recommendations of a magistrate, ruled that the deputy marshal had refused defendant McElroy's bid and that defendant McElroy was therefore not liable as a defaulting purchaser under Missouri law. Plaintiff Heritage appeals on the ground that this finding of fact was clearly erroneous. We agree and reverse.

## I.

As a preliminary matter, defendant McElroy contends that under Missouri law, only the deputy marshal had standing to move for a second sale and that the plaintiff's motion should have been dismissed for that reason alone.

■■■ Where a plaintiff's standing is contested, "the relevant inquiry is whether ... the plaintiff has shown an injury to himself that is likely to be redressed by a favorable decision. Absent such a showing, exercise of its power by a federal court would be gratuitous and thus inconsistent with" the limitations of article III of the Constitution. *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976). Heritage has obviously been in-

jured; hence the standing requirements of the Constitution have been met. Furthermore, while both Mo.Ann.Stat. § 513.240 (Vernon 1986) and Mo.R.Civ.P. 76.19 refer to the sheriff's power to move for a second sale and for recoupment of the loss from a defaulting first-sale purchaser, neither by its terms explicitly limits to the sheriff the authority to make such a motion. This court finds that plaintiff Heritage had standing to move for a second sale and for recoupment of the loss from defendant McElroy.

## II.

Practically all of the relevant Missouri case law deals not with execution sales but with partition sales pursuant to a court order (usually described as judicial sales). In judicial sales, the highest bidder becomes the purchaser when the sheriff accepts the bid and makes a record of the sale. *Gore v. Burdette*, 175 Mo.App. 389, 162 S.W. 321, 322 (1914). This is because court approval is required for the terms of the sale. *See, e.g., Jones v. Peterson*, 335 Mo. 242, 72 S.W.2d 76, 84 (1934). In this case, no record of the sale to defendant McElroy was made, and if this had been a judicial sale, therefore, defendant McElroy would never have become a "purchaser." The Missouri courts have, however, recognized that judicial sales and execution sales are different. *See, e.g., Hines v. Hines*, 624 S.W.2d 888, 889 (Mo.Ct.App.1981). In execution sales, a bidder becomes liable when he makes the bid and it is accepted. *Hall v. Giesing*, 178 Mo.App. 233, 165 S.W. 1181, 1182 (1914).

■■■ At the execution sale, defendant McElroy bid $20,000 for the relevant property. The transcript of the execution sale then reveals that the following statements were made by the deputy marshal:

I have a bid of twenty thousand dollars by Mr. McElroy on 3995 Woodcrest Drive. A bid of twenty thousand dollars by Mr. McElroy on 3995 Woodcrest Drive. Second call on bid of twenty

** Liens against the property totaled $65,000, but no amount was specified in the notice of sale.

thousand dollars by Mr. McElroy on 3995 Woodcrest Drive. Final call on bid of twenty thousand dollars by Mr. McElroy of [*sic*] 3995 Woodcrest Drive. *Property sold to Mr. McElroy.* (Emphasis supplied.)

It would be difficult to concoct a more classic example of an offer and acceptance creating a contract of sale.

At a hearing before a magistrate on the plaintiff's motion for a second sale, the deputy marshal testified that the bidding was "closed" on the property before he and defendant McElroy went to the office. The deputy marshal also testified, "Well, Mr. McElroy left and I take that as a refusal...." Apparently on the basis of this latter statement by the deputy marshal, the magistrate stated in his memorandum opinion that the deputy marshal testified that he did not consider defendant McElroy's bid accepted. The magistrate then concluded that defendant McElroy never became obligated to pay his bid price "because the Deputy Marshal refused his bid." Adopting the magistrate's finding that defendant McElroy's bid was never accepted, the district court denied the plaintiff's motion for an assessment of a deficiency against defendant McElroy in the event of a second sale.

This court has thoroughly examined the transcript of the execution sale and the transcript of the hearing before the magistrate. Although the lawyer for defendant McElroy tried several times during the magistrate's hearing to get the deputy marshal to state that defendant McElroy's bid had in fact been refused, the only testimony given by the deputy marshal in relation to his acceptance or refusal of defendant McElroy's bid is that excerpted above. There is simply no factual basis for the statement that the deputy marshal's testimony was that he did not consider the bid accepted. The "refusal" referred to by the deputy marshal was clearly defendant McElroy's refusal to pay, not the deputy marshal's own refusal to accept defendant McElroy's bid.

The district court's finding that defendant McElroy's bid was never accepted is thus clearly erroneous. The district court's order denying an assessment of a deficiency against defendant McElroy in the event of a second sale is therefore reversed, and the cause is remanded for further proceedings consistent with this opinion.